*ELGIE C. LEEDLE v. FLORENCE MAY CHRISTIE.

EDNA COWDEN v. FLORENCE MAY CHRISTIE.

1. **General Denial in Action Brought by Legatees to Set Aside for Fraud Releases to Life Tenant, Notwithstanding Will Showing Allegations True is Set Out in Petition, is not Objectionable.**

Where, in an action to set aside releases obtained by a life tenant from legatees under the will, on the ground that the said releases were obtained by fraud, the mistake is made of incorporating the will in the petition, objection can not be made to an answer in the form of a general denial, notwithstanding it involves a denial of allegations shown to be true by the will itself.

2. **Legatees Shown not under Duress but Dealing Openly and with Knowledge Fail to Sustain Burden of Proof of Fraud.**

The testimony having disclosed that the legatees were not under duress, but treated with the life tenant at arm's length, and remarked that they understood their rights, and that they preferred "a bird in hand" to the contingencies in which their legacies were involved, it can not be said that they sustained the burden of proof devolving upon them, and judgment must be given for the defendant.

*Kiefer & Kiefer* and *H. D. Metz*, for plaintiffs.
*John McSweeney* and *Ed. S. Wertz*, for defendants.

VOORHEES, J.

These cases respectively are numbered 546 and 547, and are in this court on appeal from the court of common pleas, to be heard together, and what is said in this opinion in case No. 547, as far as applicable, is to apply to case No. 546, and to be the holding and finding in that case. Both cases have been submitted to the court upon the pleadings and evidence. The plaintiffs in their petition set forth at length and in specific detail their cause of action against the defendant, both in her individual capacity and as executrix of the last will and testament of Raymond F. Christie, deceased. Said causes of action

---

*Affirmed, no op., Leedle v. Christy, 88 O. S. 527. 58 Bull. 92.

Leedle v. Christie.

are based upon alleged acts of fraud practiced upon plaintiffs by the defendant.

It is alleged in the petition, among other things, in substance, that said Raymond F. Christie, who was the husband of the defendant, Florence May Christie, by his last will and testament and by the second item thereof, gave, devised and bequeathed to his wife, Florence May Christie, all his property, both real and personal, during her natural life, or while she remained his widow, to have the full and entire control thereof, and at her death dispose of it in such a way and manner as she may see fit; but out of that estate of his said wife, during her lifetime, she was required to pay to his niece, said Edna Leedle (now Edna Cowden), $20 per month, and in case of the death of Mrs. Edna Cowden said payment should cease to be made. This provision as to the $20 to be paid Edna Leedle was revoked by codicil by said testator by said item two of the will. The testator required his said wife to pay to his sister, Elgie Leedle, plaintiff in cause No. 546, $12.50 per month during the lifetime of said Elgie Leedle, and at the death of his said wife, Florence May Christie, said Edna Leedle or her legal representative to receive out of his estate $5,000, and his said sister, Elgie Leedle, or her legal representative, $2,000, and his nephew and nieces, Raymond Caskey, Ruth Caskey and Florence May Caskey, $1,000 each. By the third item of the will the defendant was named as executrix of said will, without bond and without appraisement, but in case his said wife should re-marry immediately after said marriage she should cause to be paid out of his estate $5,000 to said niece, Edna Leedle, and $2,000 to said Elgie Leedle, his sister, and $3,000 to said Caskey children.

After setting forth this provision of the will the petition sets forth certain acts, fraudulent representations and conduct of the defendant. Said acts, statements and representations were made by one Frank X. Wolfe, who accompanied defendant on her visit to Springfield, Ohio, where they called at the residence of the plaintiff, Elgie Leedle, on or about July 27, 1909, when the releases were obtained through the plaintiffs' releasing said claims and legacies given them by said will, and it is

charged and claimed by the plaintiffs that said releases were obtained by fraud, and they ask that the same be canceled, and they be restored to their rights under said will. Copies of these releases that were left with the plaintiffs by the defendant are attached to the petition. A copy of the will of Raymond F. Christie is also attached and made a part of the petition.

The defendant files an answer which is in the nature of a general denial, after admitting certain allegations, which allegations are set out in the answer.

The first contention that will be considered is by the plaintiffs that the answer is insufficient, and that many of the allegations of the petition are shown to be true, as by the will attached to the petition. They are denied by the answer, and the plaintiff contends that this is a violation of the rule of equity pleading, and that therefore the answer is unsustained and insufficient.

This question comes to the court more as a criticism on the pleading of the answer than in any other form. There was no motion made as to this insufficiency as an answer, but the criticism appears in the discussion of the case by counsel on the trial. First, it seems that as to the petition there was no objection made as to the pleadings, and therefore any matter as to the form of the petition is waived by their not meeting it by a proper motion; but in view of the way the case comes into this court and is presented to the court on the pleadings, we think it is important to say something in regard to the petition and the mode in which it is set forth. The action herein is not founded upon the will of Raymond F. Christie; that is not the cause of action, and therefore the attaching of a copy of the will and making it a part of the petition is not good pleading. If a motion had been interposed it would have been stricken out of the petition because it was not a proper matter to be set out in the pleadings or attached thereto, and we think in this case it is somewhat important that the question should be considered before we proceed to the merits of the case.

In the case of *Crawford* v. *Satterfield*, 27 Ohio St. 421, we find this to be the rule recognized by the Supreme Court of Ohio:

Leedle v. Christie.

"In actions founded upon written agreements other than for the unconditional payment of money only, it is not good pleading to copy the written instrument into the pleading, nor to attach a copy making it a part thereof, and upon motion for that purpose a reformation of the pleading would be ordered; yet, when it has been done without objection, and the petition contains facts sufficient to constitute a good cause of action if well stated, the judgment will not be reversed."

So, in this case, the way it comes to us, we observe that the claim is made there are matters in the will that have been made a part of this petition, and we think they are not admitted to be true, and are denied with other allegations of the petition which are denied and which are in fact true, and therefore the answer was sufficient. We think this will should not have been made a part of the petition in this case. It was proper enough to attach a copy of the will as an exhibit, but it should not have been made a part of the petition. As an exhibit it would be proper enough in the case, but the action not being founded upon the will, but founded upon fraud, the will could be no part of the petition. The fraud charged is in obtaining a release of legacies given to the parties in the will in question, so we think the rules of law require just such a pleading as is the answer interposed in a case where the cause of action is founded upon fraud. Under the system of practice prescribed to the courts by the civil code, this is incumbent upon the respective parties to the action as it was by the rules of pleading at the common law which prevailed in our courts before the adoption of the code, etc.

It is the sole purpose of the answer either to controvert the right of the plaintiff to recover upon the facts stated in the pleading by general or special denial, or to allege facts which constitute new matter appearing by way of confession and avoidance of facts forming the basis of affirmative relief as counterclaim or set-off. New matter constitutes facts which if true are in law a defense to the action. This defense impliedly admits the truth of the facts stated in the petition, and that upon these facts the plaintiff is entitled to recover, and it

avoids the effect of these statements by the answer or new matter stated therein.

Now in this case, as I have stated, the cause of action is based upon fraud, that the defendant perpetrated fraud, and that fraudulent acts were perpetrated upon the plaintiffs by the defendant in obtaining the releases that were obtained, releasing the plaintiffs' claims that were given to them in the will of Raymond F. Christie. These fraudulent acts and charges are denied in the answer, and we think that when the denial of the acts of fraud is made, then it throws the burden of proving these acts upon the plaintiff, and the fact that there were other matters that are neither admitted nor denied is immaterial so far as the issues in this case are concerned. In this case the petition has attached to it a copy of the will of Raymond F. Christie, and as we have stated, the cause of action is not founded on the will. We think the answer is sufficient, and it is proper to deny these acts of fraud if they are not true, and when so denied the burden is upon the plaintiff to prove the allegations set forth in the petition.

It is contended by the plaintiff that the defendant procured by fraudulent acts the release of the legacies that were given to them in the will. It is claimed that advantage was taken of the plaintiffs, and misrepresentations were made, whereby they were induced to sign the papers releasing their claims, as set forth in the petition. It is contended in the case that the defendant occupied a fiduciary relation to these parties, that she sustained the relation of executrix to the will and the estate in question, and that by reason of that relationship it was her duty and the burden was imposed upon her that she must make full disclosure; that when she obtained these papers she must show affirmatively that the transaction was, so far as she was concerned, absolutely fair and honest. This was upon the theory and ground that because she was the executrix of the will of Raymond F. Christie she was required to state fully, and make full disclosures as to the rights of the plaintiffs under the will. And the plaintiff further contends that the defendant in making these settlements of these legacies, that the trans-

Leedle v. Christie.

action so far as she was concerned is absolutely void. If the transaction imposed upon her a fiduciary relation—namely as executrix—in dealing with this property, to make such disclosures, the question is, has she done so? We think even an executor or administrator, or a trustee, may deal with the trust property, and with the *cestui que trust,* and if they do, it is not absolutely void, it is voidable only, but the party who is affected thereby may by ratifying and affirming it bind himself. We do not agree with the contention of counsel that such transactions are absolutely void. It is not necessary to go further in the discussion of that question than has been indicated. Was the defendant in this transaction acting in a fiduciary relation to these parties? She is charged in the petition individually as well as executrix. The contention is this: that the defendant, Florence May Christie, visited the home of the plaintiffs in the city of Springfield, and that she had in her company or took with her a young man by the name of Wolf. They go to the city of Springfield and call at the residence of the plaintiff, Mrs. Leedle, and it is contended that Mrs. Christie introduced this young man who was with her as her attorney, or an attorney at law, and by representations and acts took advantage of the plaintiffs and procured from them a release of their rights and legacies under the will of Raymond F. Christie, deceased. The contention is that these parties, Mrs. Christie and Wolf, procured the signatures to said release by fraud and by taking advantage of the ignorance of these parties as to their rights in the premises. It is contended by the plaintiffs that they were hurried, that they had not an opportunity of consulting or getting advice in the matter involved, and that they were urged by these parties to sign these papers; that they signed them without reading them, or without making an investigation. So far as the question of fact is concerned the court does not find this contention to be true. We do not believe that. In fact we find to the contrary, and that these papers were read to the plaintiffs, and that they did have opportunity to read their contents, and therefore as a matter of fact we find that the papers were read to these parties, and that they had an opportunity of

knowing what they were signing, and did know what they involved—that they involved and concerned the release of their claim under the will of Raymond F. Christie.

But the contentions are that they did not read these releases or contracts; that they signed them without their being read to them or being informed as to what the effect of the papers was, or what effect they would have upon their rights. Assuming this to be true, how stand the rights of the plaintiffs? We think the question is settled in Ohio by authority of *Perry* v. *O'Neil*, 78 Ohio St. 200, 209 [85 N. E. Rep. 41]. I shall read only a brief extract, commencing on page 222, and instead of using the authorities in the opinion here I will read what the court in this case held and cited in reference to this principle of law.

In *Cassilly* v. *Cassilly*, 57 Ohio St. 582:

"Where mother and son entered into a written contract, which is correctly read to her before its execution, and she then voluntarily executes it, she is bound by its terms until it is set aside by a proceeding brought for that purpose. The facts, if satisfactorily established, that she could not read writing, and on account of the confidence reposed by her in her son, did not carefully weigh, so as to comprehend the terms of the instrument, when it was read to her, afford no ground to treat it as a nullity or to permit her to contradict its terms by parol evidence when interposed by the son as a defense to an action at law brought by her against him."

It will be observed that in *Cassilly* v. *Cassilly*, *supra*, the extract that I have read in this opinion is that there was the relation of mother and son, a confidential relation that would exist between persons so situated that would bear upon the question whether the facts there stated, the relation of confidence existing between these parties—whether that is sufficient to require the party to make disclosures by reason of this peculiar relation. On page 226 the court says:

"A person who, without reading it, signs a written contract releasing his right to maintain an action for damages resulting from an injury occasioned by the negligence of his

Leedle v. Christie.

former employer will be held to have executed the instrument with full knowledge of its contents, when his only excuse for not reading it was that he was 'somewhat hurried.' Such a contract can not be avoided by the party signing it because he relied upon 'allusions to future employment' made by the agent of his former employer in the negotiations consummated by the written release, which employment was not furnished him.''

What was the relation of these parties? When this transaction occurred and when these papers were signed they were not under duress; they consulted together before they signed these papers. They were no doubt halting between two opinions—whether it would be best for them to sign the papers or not, and as expressed by the mother, ''whether it would be best to accept a bird in the hand rather than two in the bush,'' or whether they would not take the offer that was made. They consulted together and came to the conclusion between themselves, and made known to the defendant that they would accept her offer. It is contended by the plaintiff that they were put into this situation to sign these papers or these releases for the reason that they were told by the defendant that, ''if you do not sign these papers you will never get anything.'' We do not find this to be the true statement of facts, nor do we think it is the testimony in the case. The facts as disclosed in the evidence in this regard are that the offer was made by Mrs. Christie to give so much money to them, and they were discussing between themselves as to whether she wouldn't give more, and Mrs. Christie informed them that that was the limit of her offer. ''Now if that is not accepted that will be the end. I will make further offer.'' We think from the proof in this case the evidence does not justify the contention of plaintiffs that the statement was made or any claim made by Mrs. Christie that if they didn't accept her offer they would get nothing. That was not the proposition that she made, but is as claimed by Mrs. Christie when she said ''I make this offer (namely of $2,500). If this is not accepted I will make no other, and I am not coming back again.'' That is the proposition that was made.

Then it is contended by the plaintiffs that they were in ignorance of their rights. Now were they? They knew about

these legacies. They knew what they were entitled to under the will. They knew under what conditions they were entitled to that amount. Mrs. Cowden knew she was to have $5,000, but it was dependent upon conditions that if Mrs. Christie should re-marry then it would become payable; but there was no certainty that she would be married. That could not be ascertained: it was impossible. There were no representations made one way or the other as to how that would be. They knew the fact. They knew the condition. They knew as much about the death of Mrs. Christie as she knew—an uncertain event which couldn't be ascertained. So we think that in this case the parties were on an equal footing as to the conditions surrounding the parties and the conditions of the will. We do not think it very important whether Mr. Wolf was there as an attorney, or claimed to be an attorney or not. It is undoubtedly a fact that he was not an attorney. Now if he said he was, we do not think that material. We think the facts in this case show that Mrs. Christie, as the testimony discloses, did take means and opportunities to ascertain the situation of her rights under this will. She had a right to do so. When Mrs. Christie obtains such information she goes to the plaintiffs and informs them as to what her rights are, and they in turn say to her that they know their rights under the will; that they knew their rights as well as she did. Mrs. Leedle in fact did know that she was to get $12.50 a month as an annuity under the will of her brother, and that it was dependent upon certain conditions fixed by the will. She knew that. She knew she was to get $2,000 upon certain conditions in the will. She knew that. Edna Cowden knew that she was to get $5,000 under certain conditions disclosed in the will; so that these parties were dealing with each other at arm's length, knowing their rights respectively, and therefore the plaintiffs were not in ignorance of their rights when they signed these releases. The testimony shows in this case that there was some effort made on the part of the plaintiffs to call their counsel, Mr. Kiefer, into consultation on the day that the releases were made. Mrs. Cowden suggested the calling of their counsel; Mrs. Leedle did not agree with her in that regard, and they did not call Mr. Kiefer or any other counsel to

Leedle v. Christie.

assist them. There is no evidence that Mrs. Christie interposed any objection to their obtaining counsel or assistance, but they relied upon themselves. They claimed, that they had as much information as Mrs. Christie had, and they decided that they could act for themselves, and came to the conclusion that they would sign the release and accept the offer made by Mrs. Christie. Under these circumstances the court thinks that there was no fraud or imposition practiced upon them.

Attention is called to *McAdams* v. *McAdams*, 80 Ohio St. 232, 240 [88 N. E. Rep. 542]. The case does not commence there, but for our purpose it is sufficient to read from this page:

"The law applicable to such a condition of facts should be perfectly clear. Whatever presumption of fraud arising out of confidential relations may be raised, it necessarily is rebutted when it is shown that the instrument is in exact accord with the grantor's declarations, made both before and after its execution; and that, the only charge of fraud being that it was misread to him, he had it in his possession a considerable time before signing, and at other times had ample opportunity to ascertain the truth before signing, on the day of signing and delivery, and subsequently. It is conceded on all sides that he was intending to make some sort of a reservation in the deed as to the marl, either for life or absolutely; and it would be impossible, because unnatural, to suppose that with the deed in his pocket for six weeks he would never look at it to learn whether it contained the reservation which he desired, or that, when questions as to the defendant's title arose and he resorted to the deed when it was in custody of the bank, he did not then ascertain just what were its provisions. A person of ordinary mind can not be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed."

When the proposition of settlement was agreed to, the matter was submitted to the plaintiffs as to how they would have the money divided between them, and they suggested—not Mrs. Christie—that it should be divided equally, $1,250 to each, and with that understanding Mrs. Christie drew her check and paid the amount thus agreed upon, half to each. We think from

the testimony in this case and all the circumstances that the plaintiffs were not deceived nor defrauded by any statement or acts of the defendant; and that the burden being upon the plaintiffs to establish by a preponderance of the evidence the charges of fraud against the defendant, we think the plaintiffs wholly fail, and for the reasons hereinbefore given the judgment and decree of this court will be in favor of the defendant, and the petitions will be dismissed at the cost of the plaintiffs. Motion for a new trial will be overruled, and exceptions, and forty days for finding of fact, and statutory time for bill of exceptions.

**Taggart** and **Powell, JJ.,** concur.